ROBERT M. MURPHY, Judge.
l2On June 1, 2012, plaintiff John B. Wells filed[1] a “petition for declaratory judgment, quo warranto, injunctive relief, damages and to appoint a corporate receiver.”[2] Wells asserted that the Alliance for Good Government, Inc., its Board of Directors, and its chairman, Timothy Fandal, illegally removed him from his one-year position on the Alliance for Good Government’s Board and expelled him from membership.
At the May 3, 2013 hearing, the trial court sustained defendants Alliance for Good Government, Inc. (“Alliance”) and Fandal’s (collectively “defendants”) exceptions of no right of action and mootness, dismissing all of plaintiffs claims with prejudice except for defamation; sustained defendants’ exception of lack of |sprocedural capacity as to the “Board,” the “Secretary,” and “Treasurer,”[3] dismissing them with prejudice; sustained defendants’ exception of no cause of action against chairman Fandal, dismissing claims against him individually with prejudice; sustained defendants’ exception of vagueness with respect to the defamation *85 claim, giving plaintiff 15 days from May 9, 2018 to amend and state his claim for defamation; mooted defendants’ exceptions of improper cumulation and improper use of a summary proceeding; denied plaintiffs motion to compel and to deem facts admitted; and deferred defendants’ motion for a protective order.
On May 9, 2013, the trial court entered a judgment without assigning reasons. On May 22, 2013, Wells filed a devolutive appeal from the trial court’s rulings on the exceptions of no right of action and mootness, writ of quo warranto, exception of no cause of action, exception of lack of procedural capacity, and plaintiffs motion for discovery. Defendants answered the appeal seeking this Court’s ruling on their exceptions of improper cumulation and improper use of a summary proceeding.[4] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On December 13, 1967, the Alliance was organized as a non-profit corporation under the laws of the State of Louisiana with the filing of its articles of incorporation. The Alliance’s articles have remained unchanged with its bylaws last amended in 2005. The Alliance is active in four parishes including St. Tammany.
In late 1999, Wells became a member of the St. Tammany Chapter of the Alliance and served as Vice-President of that Chapter for six months in 2002. In November of 2006, he was elected President of the St. Tammany Chapter and took 14office in January of 2007. In November of 2008, he was re-elected. In August of 2010, plaintiff made a statement to a board member which resulted in an ethics complaint. Plaintiff contended he was then exonerated by the Alliance’s ethics eom-mittee, though he admitted he was reprimanded.
In November of 2011, the St. Tammany Chapter elected Wells to the Alliance’s board. On January 19, 2012, the board in executive session voted not to seat him on the board. In March of 2012, the board then voted to expel him from membership.
On June 1, 2012, Wells filed a petition for declaratory judgment, quo warranto, injunctive relief, damages and to appoint a corporate receiver. Named defendants were Timothy Fandal, chairman of the board of the Alliance for Good Government, the Board of Directors of the Alliance of Good Government, the Alliance for Good Government, and the Alliance for Good Government, Inc. (“Alliance”).
Plaintiff questioned the authority of the board to act. He further contended that the articles and bylaws, both attached to the petition, are inconsistent as to the number of directors required to serve on the board. In fact, the articles provide for a board comprised of five directors, and the bylaws, a board of nine. It is undisputed that the size of the board, which acted to deny plaintiff his seat on the board and expel him from membership, was comprised of nine members.[5]
Plaintiff sought court appointment of a temporary and permanent receiver under La. R.S. 11:258, et seq., contending that the Directors were grossly mismanaging the corporation and committing ultra vires acts. Wells specifically complained of the actions the purported board had taken against him in refusing to | 5seat him and expelling him from the Alliance’s membership. Plaintiff sought a writ of quo war-ranto if the trial court found the board properly constituted.
*86 Plaintiff contended that the board’s actions were improper and illegal. He first argued that the board was improperly constituted, rendering the actions of the nine-member board null. Plaintiff contended that the board itself had no authority to remove or appoint a director except to fill a vacancy, and thus its actions were null.
Plaintiff further cited Alliance bylaws which incorporated Robert’s Rules of Order for its ethics committee procedures. He alleged specifically that Robert’s Rules required that a matter be dropped if the member was exonerated by the ethics committee; additionally, under Robert’s Rules, the matter would have had to have been referred to the general membership and not to the board for a vote on his expulsion from membership.
Wells contended that defendants failed to comply with the articles and bylaws and in doing so breached their fiduciary duties to its members. Plaintiff further sought a temporary and permanent receiver to effect the Alliance’s compliance with the articles and bylaws.
Plaintiff claimed that the board, secretary, and treasurer, “acting on behalf of the Board,” provided false and defamatory information to the Board of Directors that plaintiff “derailed the forum rules from being put into action.” Plaintiff further sought injunctive relief, again on the basis that the board was operating in violation of the corporate articles and bylaws.
Plaintiff prayed for the court to restore his membership in the Alliance; to nullify all actions of the board taken without his notice, participation, and deliberation; to conduct a show cause hearing to appoint a temporary receiver and after trial appoint a permanent receiver; to restore Wells to a one-year term on the [ f,board as its St. Tammany representative; to issue a permanent injunction after trial, restraining the chairman and the board from violating the articles, bylaws, and Louisiana’s nonprofit corporation law; to award damages after trial for defamation as proven; and to award costs.
On July 20, 2012, defendants Alliance and Fandal filed exceptions of improper venue, lack of procedural capacity and no cause of action. On July 24, 2012, defendants added exceptions of vagueness, improper cumulation of actions, and improper use of summary procedure. On April 12, 2013, defendants filed exceptions of no right of action and mootness.
On May 22, 2013, Wells filed a devolu-tive appeal from the May 9, 2013 judgment, which was granted on May 23, 2013.

ASSIGNMENTS OF ERROR

On appeal, plaintiff assigns the following errors by the trial court:
One[6]: the trial court erred in granting the defendants’ exception of no right of action. Appellant contends that he had standing and that the trial court erred in not ruling on his status as a member, a threshold matter in determining whether he had a right of action. Appellant further contends that his purported expulsion was illegal because it did not comply with Robert’s Rules of Order as required by the bylaws.
Two: the trial court erred in granting defendants’ exception of lack of procedural capacity.
Three: the trial court erred in granting defendants’ exception of no cause of action, contending that he stated a cause of action against Fandal or alternatively should have been given an opportunity to amend.
*87 |7Four: the trial court erred in denying appellant’s motion to compel which made it impossible to amend the defamation action.
The appellant asserts that the exceptions cited in appellee’s answer, improper cumulation and improper use of summary proceeding, for which appellees seek a ruling, are not ripe for consideration.

STANDARD OF REVIEW

The exception of no right of action assumes a viable cause of action and questions whether the plaintiff had a legal interest in judicially enforcing that cause or remedy. La. C.C.P. art. 681. The standard of review for the exception of no right of action is de novo. Morton v. Washington Nat’l Ins. Co., 420 So.2d 1019 (La.App. 5 Cir.1982).
The appellate court also conducts a de novo review of a trial court’s ruling sustaining an exception of no cause of action because the exception raises a question of law, and the court’s decision should be based only on the sufficiency of the petition. Gaudet v. Jefferson Parish, 12-707 (La.App. 5 Cir. 8/27/13), 116 So.3d 691, 693.
When considering a legal issue, the appellate court assigns no special weight to the trial court and, instead, conducts a de novo review of questions of law and renders judgment on the record. Roberts v. Hartford Fire Ins. Co., 05-1178 (La.App. 3 Cir. 4/5/06), 926 So.2d 121, writ denied, 06-1056 (La.6/23/06), 930 So.2d 984. This de novo review extends to this Court’s review of the trial court’s ruling on the exception of lack of procedural capacity.
Trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery; and such discretion will not be disturbed on appeal absent a clear showing of abuse. Roccaforte v. Nintendo of America, Inc., 05-239 (La.App. 5 Cir. 11/29/05), 917 So.2d 1143, writ denied, 01-3301 (La.3/8/02), 811 So.2d 884.
If amendment of a petition would constitute a vain and useless act, amendment of the petition is not permitted. La. C.C.P. art. 934; NOLA 180 v. Harrah’s Operating Co., Inc., 12-72 (La.App. 4 Cir. 5/16/12), 94 So.3d 886, writ denied, 12-1391 (La.10/8/12), 98 So.3d 855.

LAW AND DISCUSSION

In their exception of no right of action, defendants cite Article VII of the Alliance’s articles of incorporation which provides that the majority of the board may expel a member for cause. They further contend that following his expulsion, Wells has no actual interest/standing in challenging the acts of the corporation and thus had no right of action for any relief including receivership, quo warranto or injunc-tive relief. Defendants also assert that plaintiffs term on the board had expired, thus mooting, or rendering futile, any right of action to restore him to the board.
As indicated by plaintiff, the articles and bylaws are seemingly inconsistent as to the number of required directors on the Alliance’s board.
ARTICLES OF INCORPORATION
The Articles of Incorporation provide, in pertinent part:
Article V: “The corporate powers and management of this corporation shall be vested in, and exercised by, a board of directors of five members.... ” Any vacancy occurring among the directors of this corporation by death, resignation or otherwise, shall be filled, by election at the next regular or special meeting of the board of directors.
A majority of the directors shall constitute a quorum; and a quorum shall be necessary to consider any question that *88 may come before any meeting of directors .... A quorum being present, the affirmative vote of a majority of the directors present shall be necessary to decide any question.
[[Image here]]
|nThe board of directors shall have the power to make, alter and annul such bylaws, rules and regulations for the government of the affairs of this corporation as it may deem proper. (Emphasis added).
* ⅜: ⅜
Article VII: Membership may be revoked for cause by a majority of the Board of Directors.
BYLAWS
The bylaws provide, in pertinent part, for a board of nine members after the addition of St. Tammany as a new chapter with its allotted two board seats:[7]
Article VI(4): Each chapter will elect members to the Board of Directors as follows:
Orleans Chapter: 2 five-year seats; 1 one-year seat
St. Bernard Chapter: 2 five-year seats
Jefferson Chapter: 1 five-year seat; 1 one-year seat
A. All new chapters, as approved by a majority vote of the Board of Directors, having completed all requirements of the Bylaws, will have the opportunity to be represented on the Board of Directors with 1 five-year seat and 1 one-year seat.
Appellant argues that the articles control any inconsistency and contends that the actions taken by the allegedly improperly constituted nine-member board were void because the articles provide only for a five-member board. Appellant further argues that Louisiana corporation law provides that the corporation has the power “[t]o make and alter bylaws, not inconsistent with the laws of the state or with the articles, for the administration and regulation of the affairs of the corporation.” La. R.S. 12:207(B)(10). Appellant further contends that La. R.S. 12:222 provides that bylaws inconsistent with the Charter are void; if there is any inconsistency between the bylaws and the articles, the articles control. The actions 110of the nine-member Alliance board not to sit plaintiff on the board and to expel him would be void, per appellant’s argument.
The record does not contain minutes reflecting the actual vote where the court might, for instance, have regarded a unanimous vote on expulsion as mooting any inconsistency of the articles with the bylaws.
On December 13,1967, the Alliance filed its articles of incorporation with the Louisiana Secretary of State. Article V states that the “corporate powers and management of this corporation shall be vested in, and exercised by, a board of directors of five members.... ” That same article provides that “[t]he board of directors shall have the power to make, alter and annul such by-laws, rules and regulations for the government of the affairs of this corporation as it may deem proper.”
On January 20, 2005, the Alliance ratified the bylaws including Article VI, Section 4, pertaining to establishing the nine-member board of directors, at issue here.
LEGISLATION ON NONPROFIT CORPORATION BYLAWS
Subsequent to the creation of the Alliance for Good Government, Inc., the Leg *89 islature adopted Acts 1968, No. 105, eff. Jan. 1, 1969. Act 105 provides, in pertinent part:
Non profit corporation law by-laws, La. R.S. 12:222
A. The members or the directors of a [nonprofit] corporation may make, amend and repeal the bylaws of the corporation, subject always to the power of the members to change the action of the directors. Unless the articles or by-laws provide otherwise, the powers hereby conferred shall be exercised by a majority vote of the directors or the voting members of the corporation, as the case may be, present or represented at any regular or special meeting convened after notice of the purpose thereof; provided, however, that no greater proportion of the voting members shall be required by bylaw, article, or otherwise to make, amend, or |n repeal by laws than that proportion of directors which is required to make, amend, or repeal bylaws.
[[Image here]]
C. Subject to the provisions of this Chapter, the bylaws may include any provision for the regulation and management of the affairs of the corporation, its rights or powers, the rights, powers or duties of its members, directors or officers, or the directors’ qualifications, classification, office, or fixing their compensation, not inconsistent with law or the articles. (Emphasis added). number or term of
Article V of the articles sets both the number of board members at five and permits the adoption of bylaws for the government of corporate affairs, consistent with bylaw Article VI(4), above. The comment to the 1968 revision notes a change in the law at issue here: “This section does not change the law, except to eliminate the necessity for setting forth in the articles the by-law authority of the directors.” The authority to adopt by-laws regarding the number of directors and limiting director authority is also set forth in Act 105 pertaining to business corporation law.
Business corporation law by-laws, La. R.S. 12:28:
A. Unless the article provides otherwise, the board of directors may make and alter by-laws, including by-laws fixing the directors’ qualifications, classifications, number or term of office, or fixing their compensation, subject to the power of the shareholders to change or repeal any by-laws so made. La. R.S. 12:28 (Emphasis added).
The comment to the 1968 revision notes a change in the law: “This section changes the former law by authorizing the directors to make and alter all by-laws, including bylaws affecting their own office, unless the articles provide otherwise....”
In the instant case, the Alliance board altered its own power by ratification of bylaws authorized and consistent with Article V of its articles of incorporation. This Act under both business corporation and nonprofit corporation law, expressly expands the scope of possible bylaws to include the number of directors. See Mary v. Lupin Foundation, 609 So.2d 184, (La.1992) (Business corporation laws, La. | i?R.S. 12:1, et seq., may be referred to for guidance in case involving nonprofit corporations); see also White v. St. Elizabeth B.C. Brd. of Directors, 43,329 (La.App. 2 Cir. 6/4/08), 987 So.2d 202, 205, writ denied, 08-1440 (La.10/10/08), 993 So.2d 1284.
This legislation on its face permits a change and expansion in board composition via bylaws and validates the board’s *90 votes on not seating plaintiff and his ouster from membership. We conclude, based on review of the petition, attached exhibits, and La. R.S. 12:222, that any discrepancy between the articles and bylaws on the number of directors, does not in itself determine that the board’s votes were illegal.
Plaintiff further contends that his expulsion was illegal as it did not comply with Robert’s Rules of Order as provided by the bylaws. However, the central issue is the authority of the board to act and not the procedural requirements of the Alliance’s ethics committee provided in Robert’s Rules.
By virtue of plaintiffs membership in the Alliance since 1999 and his November 2011 election by the St. Tammany chapter to the Alliance’s board of directors, plaintiff argues that he had a real and actual interest in a seat on the board and membership in the Alliance. Contrariwise, defendants argue that plaintiffs expulsion from the board and membership eliminated his standing/right of action in quo war-ranto, receivership and injunctive relief.
We find that Wells has the requisite standing based on his actual interest in this proceeding; La. C.C.P. art. 681; see Parish of Jefferson v. Lafreniere Park Foundation, 98-146 and 98-147 (La.App. 5 Cir. 7/28/98), 716 So.2d 472 (holding that plaintiff had a right of action based on a real and actual interest in judicially enforcing the right asserted). However, as his one-year term on the board had already expired and that seat was filled for 2012, plaintiff lacks a right of action | ^insofar as his being restored to his expired term on the board. See Hardy v. Albert, 225 So.2d 127 (La.App. 4 Cir.1969) (where director’s term of office had expired and new election held, plaintiff had no right of action for quo warranto as it was moot); Industrial Companies, Inc. v. Durbin, 01-0665 (La.1/28/03), 837 So.2d 1207, 1216. On de novo review of the defendants’ exception of no right of action, we affirm the sustaining of the exception of no right of action dismissing plaintiffs claim for restoration to the board.
The authority of the nine-member board to expel plaintiff from membership is validated by Article V of the Charter which permits the five-member board to adopt bylaws and La. R.S. 12:222 which permits nonprofit corporation bylaws to address the number of directors. We thus affirm the trial court’s ruling sustaining defendants’ exception of no right of action.
In their exception of lack of procedural capacity, defendants argued that the board was not a juridical person capable of being sued, nor were the unnamed secretary and treasurer. Defendants further argued in their no cause of action exception, that chairman Fandal was improperly sued individually.
Lack of procedural capacity is a dilatory exception which tests a party’s legal capacity to bring an action or to have one brought against it. Bright Morning Star Missionary Baptist Church v. Brown, 38,333 (La.App. 2 Cir. 5/28/04), 877 So.2d 1003, writ not considered, 04-2136 (La.11/15/04), 887 So.2d 466. An entity must qualify as a juridical person to have the capacity to be sued; “[a] juridical person is an entity to which the law attributes personality, such as a corporation or a partnership.” La. C.C. art. 24. Plaintiff cites numerous cases in which boards sued or were sued. La. C.C. art. 3 provides, however, that custom cannot abrogate existing legislation; here, La. C.C. art. 24 specifically addresses the context in which a corporation has legal personality. The filing of the Alliance’s articles |14created the corporate entity; the board is a designation when the directors are present to decide a given matter. See Dejoie v. Med *91 ley, 41,635 and 41,338 (La.App. 2 Cir. 12/20/06), 945 So.2d 968, rev’d on other grounds, 08-2223 (La.5/5/09), 9 So.3d 826 (judges en banc were decision-makers but not juridical persons capable of being sued). The trial court sustained the exception of lack of procedural capacity and dismissed the board with prejudice, indicating that the board was not a juridical person to be sued.
On de novo review of the legal issue of whether the Alliance board is a juridical person capable of being sued, we find that the Alliance’s board is not a juridical person and lacks the requisite procedural capacity. The trial court did not err in refusing to allow amendment here, as the corporate entity, Alliance for Good Government, Inc., having legal personality under La. C.C. art. 24, was already named as a defendant in the petition. Allowing an amendment would serve no useful purpose. See La. C.C.P. art. 934. We therefore affirm the trial court’s dismissal of the board as a defendant.
On de novo review, and assuming all the well-pled facts are true, we find the trial court’s ruling that plaintiff lacks a cause of action against Chairman Fandal was correct. The allegations against Fan-dal and the unnamed secretary and treasurer concern only their official capacity. The petition complains that Fandal did not call the votes at issue out of order, certainly the actions or non-actions of a chairman. Plaintiff has not alleged facts that would make Fandal, the secretary or treasurer individually liable.
Defendants argued in their exceptions of improper use of summary procedure and improper cumulation of actions that receivership and quo warranto, available under summary procedure, were wrongfully cu-mulated with causes of action under ordinary procedure such as defamation. In answering the appeal, 11fidefendants seek this Court’s review of the lower court’s rulings on the exceptions of improper use of summary procedure and improper cu-mulation of actions under La. C.C.P. art 462.
The trial court held that the two exceptions, improper use of summary procedure and improper cumulation were mooted by the other rulings. Wé find no reason to disturb the trial court’s ruling.
Defendants further argued that Wells’ defamation claim was excessively vague, e.g., that the petition refers to actions by two chairmen, Charles Imbornone and Fandal, without specifying the applicable dates and which chairman committed the acts complained of. On March 11, 2013, plaintiff filed a motion to compel responses to discovery and to deem requests for admission admitted. Defendants opposed plaintiffs motion to compel, contending that plaintiff was provided notice that discovery would not precede rulings on the exceptions.
The trial court ordered plaintiff to amend within 15 days subject to dismissal. The petition was not amended to state a claim for defamation within the 15 days as ordered, nor did plaintiff appeal the trial court’s ruling on vagueness. It is therefore within the discretionary power of the trial court to dismiss the defamation claim without prejudice. Jenkins v. Hartford Accident & Indem. Co., Inc., 356 So.2d 490 (La.App. 1 Cir.1977).
The trial court’s action on the motion to compel discovery is interlocutory and not appealable absent irreparable harm. See Price v. Price, 03-272 (La.App. 5 Cir. 6/19/03), 850 So.2d 860. We find plaintiffs argument that he could not amend his defamation claim due to lack of discovery, to be unavailing. Trial courts have broad discretion in ruling on discovery matters that are presented during the *92 course of litigation, including the scope of discovery, and such discretion will not be disturbed on appeal absent a clear showing of abuse. Roccaforte, supra, 917 So.2d at 1147. We find no reason to disturb the trial court’s discretion ruling on the discovery issues.

DECREE

For the above reasons, we affirm the trial court’s judgment as follows: we affirm the trial court’s ruling sustaining the exception of no right of action; we affirm the trial court’s rulings on defendants’ exception of lack of procedural capacity as to the board, secretary, and treasurer; we affirm the trial court’s ruling on defendants’ exception of no cause of action against chairman Fandal individually; we affirm the trial court’s denial of plaintiffs motion to compel discovery responses; and we affirm the trial court’s ruling on the defendants’ exceptions of improper use of summary procedure and improper cumulation of actions.

AFFIRMED.

. The matter was originally filed in the Twenty-Second Judicial District Court before being transferred to the Twenty-Fourth Judicial District Court.

. Plaintiff further claims breach of fiduciary duties and defamation in his fourth and fifth causes of action, respectively.

.The board, secretary, and treasurer, though not named as defendants in the petition, are referred to as the individuals who "provided false and defamatory information regarding the petitioner to the Board of Directors.”

. Plaintiff did not appeal the trial court's decision on defendants’ exception of vagueness.

. The minutes of the votes at issue and the voting tallies were not included in the record.

. Appellant's assigned errors combine multi-pie questions and issues.

. Interestingly, the one-year St. Tammany seat sought by plaintiff is a creation of the bylaws which plaintiff contends are contrary to the articles.